Jerry L. Steering [State Bar No. 122509]
LAW OFFICE OF JERRY L. STEERING
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Facsimile: (949) 474-1883
jerrysteering@yahoo.com

Attorney for plaintiffs David Scott on behalf of his minor daughter, S.S., Angelica Santana on behalf of her minor daughter L.R., and Dejah Hall on behalf of her minor daughter R.H.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT, as guardian ad litem for his minor daughter, S.S., ANGELICA SANTANA, as guardian ad litem for her minor daughter, L.R., and DEJAH HALL, as guardian ad litem for her minor daughter, R.H.<br><br>     Plaintiffs,<br><br>     vs.<br><br>COUNTY OF SAN BERNARDINO, LUIS ORTIZ, ANTHONY THOMAS, ANDREW GARCIA and DOES 1 through 10, inclusive,<br><br>     Defendants.<br>_____ | ) Case No.<br>)<br>) COMPLAINT DAMAGES FOR<br>) VIOLATION OF FEDERAL<br>) CONSTITUTIONAL RIGHTS UNDER<br>) COLOR OF STATE LAW (42 U.S.C. §<br>) 1983) CLAIM FOR UNREASONABLE<br>) SEIZURE OF PERSON (U.S. CONST.<br>) AMEND 4);  VIOLATION OF<br>) CALIFORNIA CIVIL CODE SEC. 52.1<br>) UNDER CALIFORNIA STATE LAW;<br>) FALSE ARREST / FALSE<br>) IMPRISONMENT UNDER<br>) CALIFORNIA STATE LAW; AND<br>) VIOLATION OF FIRST<br>) AMENDMENT RIGHTS UNDER<br>) COLOR OF STATE LAW (42 U.S.C. §<br>) 1983)<br>)<br>)<br>) JURY TRIAL DEMANDED |

COMPLAINT FOR DAMAGES

1

**COMES NOW** plaintiffs David Scott on behalf of his minor daughter, S.S., Angelica Santana on behalf of her minor daughter L.R., and Dejah Hall on behalf of her minor daughter R.H., and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983 this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the County of San Bernardino, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. §1391(b)(2.)

3.      As plaintiffs' claims brought under California state law arise out of the same transactions and occurrences, and out of a common nucleus of operative facts as the plaintiffs' federal questions claims, this court has jurisdiction over the plaintiff's California State law claims under its supplemental jurisdiction under 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966.)   Moreover, this action is commenced less than six months after the denial of plaintiff's California Tort Claim for damages, that was timely filed with defendant County of San Bernardino.

/ / /

/ / /

COMPLAINT FOR DAMAGES
2

## **GENERAL ALLEGATIONS**

4.     Plaintiff (guardian ad litem) David Scott ("SCOTT"), is a natural person, who, at all times complained of in this action, resided in the County of San Bernardino, State of California. SCOTT is also the natural and legal father of his minor daughter, plaintiff S.S.

5.     Plaintiff SCOTT appears in this action as the guardian ad litem of his minor daughter; plaintiff  S.S.

6.     Plaintiff S.S. is a natural person who is a minor and was born on December 12, 2001, who, at all times complained of in this action, resided in the State of California.

7.      Plaintiff (guardian ad litem) Angelica Santana ("SANTANA"), is a natural person, who, at all times complained of in this action, resided in the County of San Bernardino, State of California. SANTANA is also the natural and legal mother of her minor daughter, plaintiff L.R.

8.     Plaintiff SANTANA appears in this action as the guardian ad litem of her minor daughter; plaintiff  L.R.

9.     Plaintiff L.R. is a natural person who is a minor and was born on July 31, 2000, who, at all times complained of in this action, resided in the State of California.

10.      Plaintiff (guardian ad litem) Dejah Hall ("HALL"), is a natural person,

who, at all times complained of in this action, resided in the County of San Bernardino, State of California. HALL is also the natural and legal mother of her minor daughter, plaintiff R.H.

11.     Plaintiff HALL appears in this action as the guardian ad litem of her minor daughter; plaintiff R.H.

12.     Plaintiff R.H. is a natural person who is a minor and was born on November 25, 1999, who, at all times complained of in this action, resided in the State of California.

13.     Defendant County of San Bernardino ("COUNTY") is a municipal entity located in the County of San Bernardino, State of California; within the territorial jurisdiction of this court.

14.     Defendant Luis Ortiz ("ORTIZ") is, and at all times complained of herein, was, a San Bernardino County Sheriff's Department deputy sheriff, acting as an individual person under the color of state law, in his individual capacity, and not in his official capacity, and was acting in the course of and within the scope of his employment with defendant COUNTY.

15.     Defendant Anthony Thomas ("THOMAS") is, and at all times complained of herein, was, a San Bernardino County Sheriff's Department deputy sheriff, acting as an individual person under the color of state law, in his individual

capacity, and not in his official capacity, and was acting in the course of and within the scope of his employment with defendant COUNTY.

16.     Defendant  Andrew D. Garcia ("GARCIA") is, and at all times complained of herein, was, a San Bernardino County Sheriff's Department Sergeant, acting as an individual person under the color of state law, in his individual capacity, and not in his official capacity, and was acting in the course of and within the scope of his employment with defendant COUNTY.

17.     Defendants DOES 1 through 7, inclusive, are sworn peace officers and/or deputy sheriffs and/or police officers and/or investigators and/or Special Officers and/or a nurses and/or some other public officer and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or some other employee of defendant COUNTY and/or the San Bernardino Sheriff's Department, who are in some substantial way liable and responsible for, or otherwise caused or participated in, and/or failed to supervise and/or intervene in and stop and/or prevent the actions complained of by the plaintiffs in this instant action. DOES 1 through 7, inclusive, are natural persons whose identities are presently unknown to plaintiffs, who, therefore, sue these persons by the fictitious name DOE.

18.     At all times complained of herein, DOES 1 through 7, inclusive, were acting pursuant to their authority as sworn peace officers and/or deputy sheriffs and/or police officers and/or investigators and/or Special Officers and/or a nurses

COMPLAINT FOR DAMAGES

5

and/or some other public officer and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or some other employee of defendant COUNTY and/or the San Bernardino County Sheriff's Department, who are in some substantial way liable and responsible for, or otherwise caused or participated in, and/or failed to supervise and/or intervene in and stop and/or prevent the actions complained of by the plaintiffs in this instant action were acting in the course of and within the scope of their employment with defendant COUNTY, and as individual persons, acting under the color of state law. Plaintiffs will amend their complaint to show the true identities of DOES 1 through 7, inclusive, when they become aware of said identities.

19.     Defendants DOES 8 through 10, inclusive, are sworn peace officers and/or the Chief and/or Assistant Chiefs and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials with the San Bernardino County Sheriff's Department and/or defendant COUNTY, who are in some substantial way liable and responsible for, or otherwise caused the actions complained of by plaintiffs in this action, such as via Supervisory Liability (i.e. failure to properly supervise, improperly directing subordinate deputies, approving unlawful actions of subordinate deputies, failing to intervene in and stop unlawful actions of their subordinates), and/or, such as the

failing to properly train San Bernardino County Sheriff's Department personnel in the use of force.

20.     At all times complained of herein, DOES 8 through 10, inclusive, were acting pursuant to their authority as the Chief and/or Assistant Chiefs and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials with the San Bernardino Department and/or otherwise with COUNTY, and/or some other public official(s) with defendant COUNTY, and were acting in the course of and within the scope of their employment with defendant COUNTY, and were acting as individual persons acting under the color of state law. Plaintiffs will amend their complaint to show the true identities of DOES 8 through 10, inclusive, when they become aware of said identities.

21.     At all times complained of herein, defendants ORTIZ, THOMAS, GARCIA and DOES 1 through 10, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as peace officers and/or Supervisory peace officers (as described above) and/or policy making officers / officials and/or final policy making peace officers / officials, with the San Bernardino County Sheriff's Department and/or otherwise with defendant COUNTY.

22.     Moreover, at all times complained of herein, defendants ORTIZ, THOMAS, GARCIA and DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the San Bernardino County Sheriff's Department / COUNTY, for, *inter alia*, for: 1) for using excessive / unreasonable force on persons[1]; 2) for unlawfully seizing (detaining and arresting) persons[2]; 3) for

---

[1] The San Bernardino County Sheriff's Department has a longstanding practice of encouraging it's custodial, patrol and investigative deputy sheriffs, to use unreasonable force on civilians, by its: 1) failing to take any sort of adverse employment actions, including suspensions or terminations against deputies who used unreasonable force upon person upon civilians; 2) using the pretext of an internal affairs / administrative use of force investigations of arrested persons to obtain non-Mirandized coerced custodial statements of those persons who were subjected to the use of unreasonable force by deputy sheriffs, in order to elicit statements from those civilian victims to shift the blame for the use of force upon the civilian upon the civilian, in order to protect the deputy and the department from civil and criminal liability; 3) failing to take the word of civilian witnesses when they claim that they witnessed the use of unreasonable force upon persons, and exonerating (or at least not sustaining) civilian complaints against deputies, notwithstanding even strong evidence to the contrary; 4) by having sheriff's department personnel specially assigned to the civil liabilities / risk management division of the department for the purpose of coaching deputy sheriff's about how to lie and what to lie about in criminal and civil actions involving claims of the use of unreasonable force by one or more of the department's deputy sheriffs; 5) by routinely withholding exculpatory evidence, (including impeachment evidence) from the San Bernardino County District Attorney's Office when Sheriff's Department personnel delivers reports and associated documents to procure bogus criminal prosecutions of the victims of the use of unreasonable force by deputy sheriffs, and by continuing to conceal or just destroy such exculpatory / impeachment evidence during the pendency of such procured criminal proceedings, in order to falsely convict innocent civilians for "resistance offenses" (i.e. Cal. Penal Code § 69 [resisting / obstructing peace officer with violence or the threatened use

COMPLAINT FOR DAMAGES

8

of violence], Cal. Penal Code § 148(a)(1) [resisting / obstructing / delaying a peace officer], Cal. Penal Code § 242/243(b) [battery on peace officer] and Cal. Penal Code § 240/241(c) [battery on peace officer]) in criminal actions, for the purpose of convicting the innocent victims of Sheriff's Department violence to prevent those civilian victims from being able to sue the deputies in court via *Heck v. Humphrey*, 512 U.S. 477 (1994), and otherwise pursuant to the doctrine of collateral estoppel; 6) by training deputy sheriffs with a "Situational Use Of Force Chart" that is at best confusing and that is so vague that it can and is used to justify any use of force by a deputy sheriff, 7) by retaliating against deputy sheriffs who "blow the whistle" who expose the use of unreasonable force by fellow deputy sheriffs, including bogus disciplinary and/or bogus termination actions against the whistleblowing deputy sheriff. See, (See, The Kolts Report, http://www.parc.info/client_files/Special%20Reports/3%20-%20Kolts%20Report%20-%20LASD.pdf  and "San Bernardino Sheriff's Department 30th Semiannual Report, September, 2011, Officer Involved Perception Shootings;  http://steeringlaw.com/why-the-cops-can-get-usually-get-away-with-it-americans-belief-system-about-police-officers/ .

[2] The San Bernardino County Sheriff's Department has a longstanding practice of encouraging it's deputy sheriffs to falsely arrest the victims of use unreasonable force on civilians, by its deputy sheriffs by: 1) failing to take any sort of adverse employment actions, including suspensions or terminations against deputies who falsely arrest  civilians; 2) encouraging deputy sheriffs to falsely arrest those persons who were the victims of the use of unreasonable force by deputy sheriffs to collaterally estop or to otherwise preclude (i.e. via *Heck v. Humphrey*, 512 U.S. 477 (1994)) any such victims of police violence for felony offenses such as Cal. Penal Code § 69 [resisting / obstructing peace officer with violence or the threatened use of violence] to make the falsely arrested innocent to have to post bail, with the expectation that many of said civilian victims of such false arrests will be faced with the option of either posting bail to get out of jail or to remain in jail pending trial, and will chose to plead-out to some offense that will preclude the innocent from being able to sue the offending deputy sheriff; 3) falsely arresting those civilians who were subjected to the use of unreasonable force by deputy sheriffs so as to be able to use the pretext of an internal affairs / administrative use of force investigations of arrested persons by obtaining non-Mirandized coerced custodial statements of those persons in order to elicit statements from those civilian victims to shift the blame for the use of force upon the civilian upon the civilian, in order to protect the deputy and the department from civil and criminal liability for their false arrests of person; 4) failing to take the word of civilian witnesses when they claim

unlawful searching persons[3]; 4) for unlawfully seizing private property and for

ejecting persons from private residences and for unlawful searching private

that they witnessed the use of unreasonable force upon persons, and exonerating (or at least not sustaining) civilian complaints against deputies, notwithstanding even strong evidence to the contrary; 5) by having sheriff's department personnel specially assigned to the civil liabilities / risk management division of the department for the purpose of coaching deputy sheriff's about how to lie and what to lie about in criminal and civil actions involving claims of the use of unreasonable force by one or more of the department's deputy sheriffs; 6) by routinely withholding exculpatory evidence, (including impeachment evidence) from the San Bernardino County District Attorney's Office when Sheriff's Department personnel delivers reports and associated documents to procure bogus criminal prosecutions of the victims of the use of unreasonable force by deputy sheriffs, and by continuing to conceal or just destroy such exculpatory / impeachment evidence during the pendency of such procured criminal proceedings, in order to falsely convict innocent civilians for "resistance offenses" (i.e. Cal. Penal Code § 69 [resisting / obstructing peace officer with violence or the threatened use of violence], Cal. Penal Code § 148(a)(1) [resisting / obstructing / delaying a peace officer], Cal. Penal Code § 242/243(b) [battery on peace officer] and Cal. Penal Code § 240/241(c) [battery on peace officer]) in criminal actions, for the purpose of convicting the innocent victims of Sheriff's Department violence to prevent those civilian victims from being able to sue the deputies in court via *Heck v. Humphrey*, 512 U.S. 477 (1994), and otherwise pursuant to the doctrine of collateral estoppel; 7) by training deputy sheriffs with a "Situational Use Of Force Chart" that is at best confusing and that is so vague that it can and is used to justify any use of force by a deputy sheriff, so that department deputy sheriffs arrest persons for resisting the use of unreasonable force upon them, 8) by retaliating against deputy sheriffs who "blow the whistle" who expose the false arrest of innocents fellow deputy sheriffs, including bogus disciplinary and/or bogus termination actions against the whistleblowing deputy sheriff.

[3] Training the Sheriff's Department's deputies to searching persons who deputies come into contact with in public or in private homes, who the deputies have no reasonable suspicion of either criminality afoot by the person, and who the deputies have no reason to suspect is either armed or dangerous, under the false guise / pretense of "officer safety", in order to unlawfully find incriminating evidence against such persons.

residences [4]; 5) for fabricating / destroying / concealing / altering evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs and supervisory personnel from civil, administrative and criminal liability[5]; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech[6]; 9) for interfering with

_____

[4] San Bernardino County Sheriff's Department Deputy Sheriffs are trained to, and have a custom and practice of ordering persons to exit their residences and to detain such persons, in the absence of a search warrant for that residence and in the absence of an arrest warrant for a resident of such private residences, for officer safety purposes and for the purpose of obtaining incriminating evidence against those innocents / civilians whose constitutional rights were violated by deputy sheriffs.

[5] By routinely withholding exculpatory evidence (including impeachment evidence, such as peace officer personnel information that the department full well knows would be exculpatory evidence in a particular case) from the San Bernardino County District Attorney's Office when Sheriff's Department personnel delivers reports and associated documents to procure bogus criminal prosecutions of the victims of the use of unreasonable force by deputy sheriffs, and by continuing to conceal or just destroy such exculpatory / impeachment evidence during the pendency of such procured criminal proceedings, in order to falsely convict innocent civilians for "resistance offenses" (i.e. Cal. Penal Code § 69 [resisting / obstructing peace officer with violence or the threatened use of violence], Cal. Penal Code § 148(a)(1) [resisting / obstructing / delaying a peace officer], Cal. Penal Code § 242/243(b) [battery on peace officer] and Cal. Penal Code § 240/241(c) [battery on peace officer]) in criminal actions, for the purpose of convicting the innocent victims of Sheriff's Department violence to prevent those civilian victims from being able to sue the deputies in court via *Heck v. Humphrey*, 512 U.S. 477 (1994), and otherwise pursuant to the doctrine of collateral estoppel.

[6] Such as by unlawfully beating-up, falsely detaining and falsely arresting, and procuring the malicious criminal prosecutions of those civilians who verbally protest and/or verbally challenge police actions by department deputies (See, "San

COMPLAINT FOR DAMAGES

persons' rights to remain in their private residences; 11) for covering-up unlawful

and tortious conduct by San Bernardino County Sheriff's Department personnel[7],

---

Bernardino Sheriff's Department 29th Semiannual Report, July 2010, Obstruction
Arrests At The LASD", http://zev.lacounty.gov/pdfs/LASD-29th-SAR-FINAL.pdf .)

[7]   The San Bernardino County Sheriff's Department has a longstanding practice of
encouraging it's custodial, patrol and investigative deputy sheriffs, to use
unreasonable force on civilians, by its: 1) failing to take any sort of adverse
employment actions, including suspensions or terminations against deputies who
used unreasonable force upon person upon civilians; 2) using the pretext of an
internal affairs / administrative use of force investigations of arrested persons to
obtain non-Mirandized coerced custodial statements of those persons who were
subjected to the use of unreasonable force by deputy sheriffs, in order to elicit
statements from those civilian victims to shift the blame for the use of force upon
the civilian upon the civilian, in order to protect the deputy and the department from
civil and criminal liability; 3) failing to take the word of civilian witnesses when
they claim that they witnessed the use of unreasonable force upon persons, and
exonerating (or at least not sustaining) civilian complaints against deputies,
notwithstanding even strong evidence to the contrary; 4) by having sheriff's
department personnel specially assigned to the civil liabilities / risk management
division of the department for the purpose of coaching deputy sheriff's about how to
lie and what to lie about in criminal and civil actions involving claims of the use of
unreasonable force by one or more of the department's deputy sheriffs; 5) by
routinely withholding exculpatory evidence, (including impeachment evidence)
from the San Bernardino County District Attorney's Office when Sheriff's
Department personnel delivers reports and associated documents to procure bogus
criminal prosecutions of the victims of the use of unreasonable force by deputy
sheriffs, and by continuing to conceal or just destroy such exculpatory /
impeachment evidence during the pendency of such procured criminal proceedings,
in order to falsely convict innocent civilians for "resistance offenses" (i.e. Cal. Penal
Code § 69 [resisting / obstructing peace officer with violence or the threatened use
of violence], Cal. Penal Code § 148(a)(1) [resisting / obstructing / delaying a peace
officer], Cal. Penal Code § 242/243(b) [battery on peace officer] and Cal. Penal
Code § 240/241(c) [battery on peace officer]) in criminal actions, for the purpose of
convicting the innocent victims of Sheriff's Department violence to prevent those
civilian victims from being able to sue the deputies in court via *Heck v. Humphrey*,
512 U.S. 477 (1994), and otherwise pursuant to the doctrine of collateral estoppel;

and 12) for performing unlawful warrantless searches of private residences[8], and were a proximate cause of the very same California state law, and federal and state constitutional violations complained of below by the plaintiffs in this action.

23.     In addition, defendant COUNTY had notice of other false arrests by said individual defendants to this action, especially about ORTIZ, and failed to take any corrective / disciplinary actions against ORTIZ.  In addition, defendants ORTIZ, THOMAS, GARCIA and all of the DOE defendants to this action, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiffs' minor children their federal constitutional and statutory rights, and California constitutional and statutory state law rights, as described above and

---

6) by training deputy sheriffs with a "Situational Use Of Force Chart" that is at best confusing and that is so vague that it can and is used to justify any use of force by a deputy sheriff, 7) by retaliating against deputy sheriffs who "blow the whistle" who expose the use of unreasonable force by fellow deputy sheriffs, including bogus disciplinary and/or bogus termination actions against the whistleblowing deputy sheriff. See, (See, The Kolts Report, http://www.parc.info/client_files/Special%20Reports/3%20-%20Kolts%20Report%20-%20LASD.pdf  and "San Bernardino Sheriff's Department 30th Semiannual Report, September, 2011, Officer Involved Perception Shootings;  http://steeringlaw.com/why-the-cops-can-get-usually-get-away-with-it-americans-belief-system-about-police-officers/ .

[8] San Bernardino County Sheriff's Department Deputy Sheriffs are trained to, and have a custom and practice of ordering persons to exit their residences and to detain such persons, in the absence of a search warrant for that residence and in the absence of an arrest warrant for a resident of such private residences, for officer safety purposes and for the purpose of obtaining incriminating evidence against those innocents / civilians whose constitutional rights were violated by deputy sheriffs.

COMPLAINT FOR DAMAGES

below, and acted in joint and concerted action to so deprive the plaintiffs of those rights as set forth below; all in violation of 42 U.S.C. § 1983 and otherwise in violation of California state law.

24.     Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a legal cause the violation of the plaintiffs' federal and state constitutional and statutory rights, as set forth below.

**FIRST CAUSE OF ACTION**
**UNREASONABLE SEIZURE OF PERSON – UNLAWFUL ARREST**
**WITHOUT WARRANT OR PROBABLE CAUSE**
**UNDER FOURTH AMENDMENT**
**[42 U.S.C. § 1983]**
**(Against all defendants)**

25.     Plaintiffs hereby re-allege and re-incorporate by reference the allegations set forth in paragraphs 1 through  24, inclusive, above, as though set forth in full herein.

26.     On or about the weekend of October 5-7, 2013, plaintiffs' three minor children were confronted by another student with a history of bullying and violence[9] at Etiwanda Intermediate School in Etiwanda, California, and said female student bully challenged plaintiff-parents' minor children to a fight and made threats of

---

[9] Defendants all knew of the bullying student and were on notice, as Plaintiff SANTANA had previously reported an assault to the San Bernardino County Sheriff's Department by said bullying student earlier that year, which assault left her child L.R. with a bloody nose and seeking a transfer out of the school.

violence towards the girls of plaintiff-parents at Windrows Park in Rancho Cucamonga, California.

27.     Their first day upon their return to school on October 8, 2013, plaintiffs' minor children went voluntarily and with great courage and bravery to the principal's office at Etiwanda Middle School to report the bullying incident and threats of violence at Windrows Park instigated by said bullying student; but the principal did not meet with the children or respond to the reporting of the bullying incident and threats of violence.

28.     The school principal's only reaction to the reporting plaintiffs' minor children in her office to complain about the bullying student was to place a phone call to the San Bernardino County Sheriff's Department without meeting with the children to listen to their complaints and concerns about bullying and threats of violence that had taken place over the weekend.

29.     Upon arrival to Etiwanda Intermediate School, defendants ORTIZ, THOMAS and DOES 1 through 3, inclusive, detained the minor children in the principal's office without the presence of the school's principal or the girls' parents, and immediately read the minor children their *Miranda* rights and placed them under arrest, without investigation or inquiry as to the bullying incident at Windrows Park and the threats of violence from the bullying student that the girls were there in the principal's office to report.

COMPLAINT FOR DAMAGES
15

30.     Defendants ORTIZ, THOMAS and DOES 1 through 3, inclusive, then placed plaintiffs' minor plaintiff children under arrest and handcuffed them in front of other school children, causing them great emotional distress and trauma and humiliation, which has manifested into physical damages. The handcuffing of the children was done even though the girls presented absolutely no danger to officer safety, and in the absence of reasonable suspicion or probable cause to believe that they had committed, were committing or about to commit a crime.

31.     Defendants ORTIZ, THOMAS and DOES 1 through 3, inclusive, also sent the bullying child home with her parent(s), allowing the said bullying child to be set free while detaining and arresting the plaintiff's children who complained of bullying and threats of violence to school authorities and police.

32.     Defendants ORTIZ, THOMAS and DOES 1 through 3, inclusive, then placed plaintiff's said minor children into the back of patrol car(s) and took the plaintiffs' minor children, handcuffed and arrested, to the San Bernardino County Sheriff's Department substation in Rancho Cucamonga, and kept the minor children detained, under arrest and handcuffed in a detention and/or custody room while defendant deputies contacted their parents, which further traumatized plaintiffs' minor children, causing them further emotional distress and trauma and humiliation, which has now manifested itself into physical damages.

33.     While at the Rancho Cucamonga Sheriff's substation, each of plaintiffs' minor children was forced and coerced to sign by said defendants ORTIZ and THOMAS, a bogus citation (without the presence of their parents, the plaintiffs in this matter), for the charge of Disturbing the Peace, in violation of California Penal Code Section 415. At least one minor child, L.R., had to print her name on the face of the citation, because she is too young to understand what a signature is and is unable to sign her name.

34.     Upon arrival to the police station to pick up her minor child, plaintiff SANTANA requested a copy of the police report about the assault upon her minor child, L.R., earlier in the year by the said bullying student, but was told by Sheriff's deputies a copy of the police report would not be provided.  As of the filing of this complaint, plaintiff SANTANA still has not been given a copy of the police report evidencing a prior assault upon her child by the bullying student which took place on or about April, 2013.

35.     Moreover, upon arrival at the sheriff's substation, each plaintiff-parent had their children held hostage by defendants ORTIZ, THOMAS and DOES 1 through 7, inclusive; essentially kidnapping their girls until each parent-plaintiff signed and/or executed a "ransom" citation requiring each parent to appear in court under California Welfare & Institutions Code section 660.5 for the falsely alleged offenses of their minor children issued upon the girls in the form of bogus citations

which falsely alleged that the girls were disturbing the peace, something that was not true.

36.     Said detention, arrest and citations were performed and issued by ORTIZ, THOMAS and said DOE defendants, above-referenced, was done by them without reasonable suspicion to believe that any of the plaintiff minor children had committed a crime or belief that the minor children had committed any offense, and without probable cause or a warrant to believe that the minor children committed any crime.

37.     In addition, defendant Sergeant GARCIA told the plaintiff-parents that his subordinate officers ORTIZ and THOMAS were justified in their unlawful conduct in detaining and arresting and charging the minor children with a crime, and defendant GARCIA approved, encouraged and ratified the unlawful conduct of his subordinate officers, under the color of law and in a supervisory capacity as Deputy Sergeant when he should have reasonably known that the plaintiff-parents' children's constitutional rights were being violated; and defendant GARCIA failed to intervene to protect the rights of the children and prevent the children from being falsely arrested, taken from school in handcuffs in front of other children, falsely imprisoned by sheriff's deputies and falsely charged with a crime. Accordingly, said detention and arrest of the minor children was done in violation of the children's right to be free from unreasonable seizures of their persons under the Fourth

COMPLAINT FOR DAMAGES

18

Amendment of the United States Constitution, and defendant GARCIA should have reasonably known that his subordinate officers were depriving the minor children of their constitutional rights.

38.     Said detention and arrest of plaintiffs' minor children by said defendants was done pursuant to the policies, customs, usages and practices of defendant COUNTY for unreasonably and unlawfully arresting minor children and removing them from school, handcuffing the children, and taking them to the sheriff's substation to force and coerce the children to sign bogus citations for offenses the minor children never committed.

39.     As a result of the bullying incident described hereinabove, all three of the minor children of the plaintiff-parents were forced to transfer their children to other schools and/or home school their children, since the bullying student was allowed to remain on campus and continue terrorizing the children.

40.     Said unreasonable seizure of  the minor children of plaintiffs ORTIZ, THOMAS and DOES 1 through 10, also caused plaintiffs SCOTT, SANTANA, HALL and their minor children S.S., L.R. and R.H. to suffer substantial general and special damages, including but not limited to, great and severe mental and emotional distress, pain and suffering[10], psychiatric and psychological counseling and therapy and medical bills and expenses, and other special damages; all in an amount to be

---

[10] And the physical manifestation of the same.

COMPLAINT FOR DAMAGES

19

shown at trial, in excessive of $10,000,000.00.

41.     Said unreasonable and unlawful seizure of the minor children of plaintiffs SCOTT, SANTANA and HALL by ORTIZ, THOMAS, GARCIA and DOES 1 and 2, above-referenced, was done maliciously and in reckless disregard of the minor children's constitutional rights; sufficient for an award of punitive damages against said defendants (save COUNTY); in an amount to be shown at trial, in excessive of $10,000,000.00.

## SECOND CAUSE OF ACTION
### Violation Of Cal. Civil Code § 52.1
### Under California State Law
### (Against all Defendants)

42.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41, inclusive, above, as if set forth in full herein.

43.     The actions by defendants interfered with, and/or attempted to interfere with, by threats, intimidation, and coercion, and by the actual use of force, the exercise or enjoyment by the minor children of their rights secured by the Constitution or laws of the United States, and of the rights secured by the California Constitution and the laws of California, as described above; in violation of Cal. Civil Code § 52.1.

44.     Defendants, and each of them, are liable to plaintiff-parents for said violations of the minor children's constitutional and statutory rights, pursuant to Cal. Civil Code § 52.1, and Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.8.

COMPLAINT FOR DAMAGES
20

45.     As a direct and proximate result of defendants' actions, as above-referenced, the minor children of the plaintiff-parents have suffered great and severe mental and emotional distress, pain and suffering[11], psychiatric and psychological counseling and therapy and medical bills and expenses, and other special damages; all in an amount to be shown at trial, in excessive of $10,000,000.00.

46.     The actions by said defendants were done maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against defendants (save COUNTY) in an amount to be shown at trial, in excess of $10,000,000.00 each.

47.     In addition, pursuant to Cal. Civil Code § 52.1, plaintiffs are entitled to an award of treble compensatory damages against defendants.

### THIRD CAUSE OF ACTION
**False Arrest/False Imprisonment
Under California State Law
(Against all Defendants)**

48.     Plaintiffs hereby re-allege and re-incorporate by reference the allegations set forth in paragraphs 1 through 47, inclusive, above, as if set forth in full herein.

49.     As complained of above, the children of plaintiff-parents SCOTT, SANTANA and HALL were unlawfully seized and arrested at their middle school

---

[11] And the physical manifestation of the same.

COMPLAINT FOR DAMAGES

21

and thereafter falsely imprisoned by defendants ORTIZ, THOMAS, GARCIA and DOES 1 and 2, above-referenced, on October 8, 2013.

50.     As complained of above, said defendants ORTIZ, THOMAS, GARCIA and DOES 1 and 2, above-referenced, had neither reasonable suspicion of criminality afoot about any of the children of plaintiff-parents SCOTT, SANTANA and HALL, nor probable cause to believe that the minor children had committed a crime.

51.     Defendants ORTIZ, THOMAS, GARCIA and DOES 1 and 2, above-referenced, are liable to the plaintiff-parents for their false arrests / false imprisonments of the plaintiff-parents minor children pursuant to Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.4 and 820.8.

52.     As a direct and proximate result of the actions of ORTIZ, THOMAS, GARCIA and DOES 1 and 2, above-referenced, the minor children of plaintiff-parents were: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general damages, including attorney's fees, bail costs and 4) incurred forced relocation to other schools and other associated costs and expenses; all in an amount to be proven at trial in excess of $10,000,000.00.

53.     The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive

1    / exemplary damages against all defendants and each of them, except defendant

2    COUNTY, in an amount to be proven at trial in excess of $10,000,000.00.

3

4    <center>**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**</center>

5    <center>**Violation of Right to Freedom of Speech / Right to Petition Government for**</center>

6    <center>**Redress of Grievances Under the First Amendment [42 U.S.C. §1983]**
**(Against all Defendants)**</center>

7

8    54.    Plaintiffs hereby re-allege and re-incorporate by reference the

9    allegations set forth in paragraphs 1 through 53, inclusive, above, as if set forth in

10

11    full herein.

12    55.    As shown above, the minor children of plaintiff-parents went to the

13

14    principal's office to report bullying and threats of violence made against the minor

15    children in this action, and the minor children further complained to defendants

16    ORTIZ, THOMAS GARCIA and DOES 1 and 2, above-referenced, several times

17

18    about being bullied.

19    56.    Moreover, said defendants ORTIZ, THOMAS GARCIA and DOES 1

20

21    and 2, above-referenced, took said actions against the minor children of the plaintiff-

22    parents in this action in large part due to their verbal protests of the defendants'

23    conduct towards the children; S.S., L.R. and R.H.

24

25    57.    A substantial or motivating factor in the decisions of said defendants to

26    takes said tortious and felonious actions against the children of the plaintiffs

27

28    complained of herein, was their exercise of constitutionally protected free speech

<center>COMPLAINT FOR DAMAGES</center>
<center>23</center>

under the First Amendment to the United States Constitution.

58.   As a direct and proximate result of the actions of ORTIZ, THOMAS GARCIA, COUNTY and DOES 1 through 10, inclusive, the children of the plaintiff-parents were: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses, 3) incurred lost wages and profits, and 4) suffered terrible physical injury, pain and suffering, as well as mental and emotional pain and suffering, and 5) suffered / is suffering the forced relocation to other schools; all in an amount to be proven at trial; in excess of $10,000,000.00.

59.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of the minor children's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, except defendant COUNTY, in an amount to be proven at trial, in excess of $10,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

1) For an award of compensatory damages in favor of plaintiff an amount to be shown at trial, in excess of $10,000,000.00[12]  against all defendants;

---

[12] Including treble damages.

COMPLAINT FOR DAMAGES

2) For an award of punitive / exemplary damages in an amount to be shown at trial against all defendants, save defendant COUNTY, in an amount to be shown at trial, in excess of $10,000,000.00.

3) For reasonable attorney's fees and other costs of suit herein;

4) For a trial by jury;  and

5) For such other and further relief as this honorable court deems proper, just and equitable.

JERRY L. STEERING
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES
25